# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 13-471V
Filed: September 27, 2022

```
* * * * * * * * * * * * * * * * * * * * * * * *
WENDY WILLIAMS,                      *        UNPUBLISHED
                                     *
                   Petitioner,       *
         v.                          *
                                     *        Decision on Interim Attorneys' Fees and
                                     *        Costs.
SECRETARY OF HEALTH                  *
AND HUMAN SERVICES,                  *
                                     *
                   Respondent.       *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Richard Gage, Richard Gage, P.C., Cheyenne, WY, for petitioner.*
*Althea Davis, United States Department of Justice, Washington, DC, for respondent.*

## DECISION ON INTERIM ATTORNEY'S FEES AND COSTS[1]

**Roth,** Special Master:

On July 12, 2013, Wendy Williams ("Ms. Williams" or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"). Petitioner alleged that she developed multiple sclerosis ("MS") and optic neuritis after receiving a Hepatitis B vaccination on February 16, 2011. *See* Petition ("Pet."), ECF No. 1. On December 7, 2021, petitioner's counsel, Mr. Gage, filed a Motion for Interim Attorneys' Fees and Costs pursuant to Section 15(e) of the Vaccine Act. After careful consideration, the undersigned has determined to grant in part the request for the reasons set forth below.

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986).  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Procedural History

This case was filed on July 12, 2013 and was initially assigned to Special Master Dorsey. ECF No. 1, 3. Medical records in the form of a compact disc were received by the Clerk's Office on July 26, 2013. An initial status conference was held on September 5, 2013, after which petitioner was ordered to file all outstanding medical records and a statement of completion. ECF No. 10. Petitioner filed a status report on October 4, 2013, indicating that she had filed all records to date, apart from records from one facility that she was still trying to obtain. ECF No. 12. On November 4, 2013, petitioner filed the remaining outstanding record and an amended statement of completion. ECF Nos. 14-15, Pet. Ex. 14.

Respondent filed his Rule 4 (c) Report on February 7, 2014, indicating the case was not appropriate for compensation. ECF No. 19. Another status conference was held on April 3, 2014, following which petitioner was ordered to file outstanding medical records and an expert report. ECF No. 21. Petitioner filed additional medical records on April 30, 2014, ECF No. 22, Pet. Ex. 15, and on June 4, 2014, ECF No. 26, Pet. Ex. 16-17, and filed an expert report on August 15, 2014. ECF No. 31, Pet. Ex. 18-19. Petitioner filed a supplemental expert report on May 13, 2015. ECF No. 48, Pet. Ex. 22. On July 27, 2015, respondent filed an expert report. ECF No. 53, Resp. Ex. Q. The parties filed a joint status report on September 14, 2015, respondent maintaining his position the case was not appropriate for compensation. ECF No. 55.

This case was reassigned to me on October 22, 2015. Notice of Reassignment, ECF No. 56-57. A status conference was held on November 13, 2015, where the parties were instructed to file a joint status report on the possibility of settlement. ECF No. 58. The parties filed a joint status report on December 14, 2015, indicating that respondent was "willing to entertain a demand." ECF No. 59. Over the next year, the parties engaged in settlement discussions in an attempt to informally resolve this matter. Another status conference was held on April 19, 2017, where petitioner was ordered to file a status report in 30 days advising on the progress of settlement discussions. ECF No. 73. Further settlement discussions ensued over the next several months. Petitioner filed a status report on September 4, 2018, stating that she needed more time to contemplate the proposed settlement offer. ECF No. 93. The parties continued to engage in settlement discussions through October 2018.

On October 19, 2018, petitioner's then counsel moved for Interim Attorneys' Fees and Costs. ECF No. 95. On October 22, 2018, attorney Richard Gage was substituted as petitioner's representation. ECF No. 96. Apparently, a tentative settlement agreement had been reached but, upon further consideration, was rejected on November 19, 2018. ECF No. 98. On January 15, 2019, the undersigned awarded attorneys' fees and costs to petitioner's prior counsel. No. 101.

The case was referred to ADR on January 29, 2019. ECF No. 106.  During the course of ADR, petitioner was ordered to provide additional documentation in support of her damage claim. The case was removed from ADR on January 2, 2020, following petitioner's status report stating that mediation would likely be unsuccessful in this case. ECF No. 110-111. Throughout the next year, both parties filed medical literature and additional expert reports, and petitioner filed updated medical records. A one-day hearing was held via video conference on February 18, 2021.

Respondent filed a post-hearing brief on August 20, 2021. ECF No. 166. Petitioner filed her post-hearing brief on August 23, 2021. ECF No. 167.

On December 7, 2021, petitioner filed a Motion for Interim Attorneys' Fees and Costs ("Motion for Fees") requesting a total of **$113,549.16**[3], representing **$64,107.70** in attorneys' fees and **$50,872.46** in attorneys' costs. Motion for Fees, ECF No. 168. Respondent filed his response on December 27, 2021, stating no objection and submitting that all the statutory requirements have been met. ECF No. 169.

This matter is now ripe for decision.

## II. Legal Framework

The Vaccine Act permits an award of reasonable attorneys' fees and other costs. § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, petitioner's counsel is automatically entitled to reasonable attorneys' fees. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id.*

Special masters have substantial discretion in awarding fees and may adjust a fee request sua sponte, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

## III. Discussion

### A.     Availability of Interim Fees

Special masters have discretion to award interim fees while the litigation is ongoing if "the cost of litigation has imposed an undue hardship" and there is "a good faith basis for the claim." *Shaw v. Sec'y of Health & Human Servs.*, 609 F. 3d 1372, 1375 (Fed. Cir. 2010); *see Avera*, 515 F. 3d at 1352. The court in *Avera* held that interim fees may be awarded "in appropriate circumstances." *Id.* at 1351. The court then listed some circumstances—cases involving "protracted" proceedings and "costly experts"—in which it would be "particularly

---

[3] After calculating the request made by petitioner's counsel and double checking the math, counsel appears to have shortchanged himself. The amount requested totals $114,980.16, not the requested $113,549.16. Therefore, all calculation will be done using $114,980.16.

appropriate" to award interim fees. *Id.* at 1352. But "the Federal Circuit in *Avera* . . . did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees," *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012), and "special masters [retain] broad discretion in determining whether to award" them, *Al-Uffi ex rel. R.B. v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). In making this determination, "the special master may consider any of the unique facts of a case." *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 94 (2016).

Under the circumstances of this case, interim fees are warranted. The parties were in settlement discussions for over four years in an attempt to resolve this matter. However, negotiations ultimately reached an impasse. Petitioner advised that she did not believe mediation would be successful in this matter and asked that the matter be returned to the litigation track. The matter then proceeded with the exchange of expert reports, the filing of updated medical records, and an Entitlement Hearing. In total, this case has been pending for nine years, which ordinarily "suffice[s] to constitute the type of 'circumstances' to warrant an interim fee award." *Woods*, 105 Fed. Cl. at 154; *see also, e.g., Thompson v. Sec'y of Health & Human Servs.*, No. 12-475V, 2018 WL 1559799, at *1 (Fed. Cl. Spec. Mstr. Feb. 28, 2018) ("[I]nterim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship in petitioner"); *Kottenstette v. Sec'y of Health & Human Servs.*, No. 15-1016V, 2017 WL 5662780, at *3 (Fed. Cl. Spec. Mstr. Oct. 30, 2017) (finding two-year proceeding constituted appropriate circumstances for interim fees). Further, respondent has raised no objections to the motion and submitted that petitioner has satisfied the statutory requirements. ECF No. 169.

Moreover, petitioner has expended significant time and costs in litigating this matter. A decision in this case, though forthcoming, requires additional time, given the current case load. A conclusion in this matter is therefore not imminent. In sum, the circumstances of this case warrant an award of interim fees and costs, so as not to impose economic hardship on petitioner.

## B.    Reasonable Hourly Rates

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323

(Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Mr. Gage has nearly thirty-two years of legal experience since his admission to the Wyoming State Bar in 1990. Other special masters have awarded Mr. Gage non-forum rates, given that the substantial majority of the work on his cases is performed in Wyoming. *See Auch v. Sec'y of Health & Human Servs.*, No. 12-673V, 2016 WL 3944701 (Fed. Cl. Spec. Mstr. May 20, 2016). Here, Mr. Gage submitted hourly rates for himself of $326 for 2018, $338 for 2019, $350 for 2020, and $362 for 2021. Motion for Fees at 32-41. The submitted rates have been upheld by other special masters. *See Ferguson v. Sec'y of Health & Human Servs.*, No. 17-1737V, 2022 WL 1467655 (Fed. Cl. Spec. Mstr. Apr. 12, 2022); *Roscoe v. Sec'y of Health & Human Servs.*, No. 11-206V, 2021 WL 3746783 (Fed. Cl. Spec. Mstr. July 30, 2021); *Goldman v. Sec'y of Health & Human Servs.*, No. 16-1523V, 2021 WL 3056263 (Fed. Cl. Spec. Mstr. June 21, 2021).

Mr. Gage has also requested rates for attorney Kristen Blume of $270 for 2018, $338 for 2019, and $355 for 2021. Motion for Fees at 45. The submitted rates for 2019 and 2021 have been upheld by other special masters. *See Ferguson*, 2022 WL 1467655, at *2 (awarding the requested rates for 2019 and 2021); *Roscoe*, 2021 WL 3746783, at *2 (awarding the requested rates for 2019 and 2021). However, Ms. Blume's requested rate for 2018 exceeds what she has previously billed at and been awarded for the same year. *See, e.g.*, *Fairchild v. Sec'y of Health & Human Servs.*, No. 13-487V, 2020 WL 2467078, at *2 (Fed. Cl. Spec. Mstr. Apr. 13, 2020); *Demitor v. Sec'y of Health & Human Servs.*, No. 17-564V, 2020 WL 1027955, at *4-5 (Fed. Cl. Spec. Mstr. Feb. 7, 2020); *Williams v. Sec'y of Health & Human Servs.*, No. 15-1224V, 2019 WL 7482148, at *2 (Fed. Cl. Spec. Mstr. Dec. 2, 2019); *Ellis v. Sec'y of Health & Human Servs.*, No. 13-336V, 2019 WL 3315326, at *7 (Fed. Cl. Spec. Mstr. Jun. 24, 2019). The undersigned will therefore compensate her work in 2018 at $251.00 per hour consistent with these prior rulings. This results in a **reduction of $25.10**.

Finally, Mr. Gage requested rates for his paralegals of $120 for 2018 through 2020 and $130 for 2021. Motion for Fees at 47-52. These rates have been upheld by other special masters. *See Ferguson*, 2022 WL 1467655, at *2 (awarding the requested rates for 2018-2021); *Roscoe*, 2021 WL 3746783, at *2 (awarding the requested rates for 2018-2021).

Apart from the billing rate for Ms. Blume in 2018 as detailed above, I find the hourly rates billed by Mr. Gage to be reasonable.

## C.    Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a

---

[4] The 2015-2022 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Sers.*, No. 09-923V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of the hours billed by Mr. Gage and his firm, I find that the majority of overall hours spent on this matter are reasonable. However, paralegal Sheree Lange logged 48.2 hours in 15 entries. Motion for Fees at 57-58. The lack of detail in Ms. Lange's entries makes it difficult to assess the reasonableness of the time spent on the matter. Accordingly, the undersigned reduces the amount requested for Ms. Lange by 5%, with a warning that a greater amount will be deducted in the future for billing entries that are unclear and lack sufficient information of the work performed to determine the reasonableness of the time billed. This results in a **reduction of $289.20.**

**D.    Reasonable Costs**

Petitioner also requested $12,754.81 in costs for life care planner Life Care Consultants, which billed at a rate between $100 - $185 depending on the life care planner. Motion for Fees at 69-75. This is below the rate that has been awarded to other life care planners in the Vaccine Program. *See Desai v. Sec'y of Health & Human Servs.*, No. 14-811V, 2018 WL 6819551 (Fed. Cl. Spec. Mstr. Nov. 27, 2018). Accordingly, the undersigned finds the billing rate reasonable. In light of petitioner's needs, the hours spent by the life care planners are reasonable and thus, will be compensated in full.

Additionally, petitioner requested $16,540.00, which includes the $1,000.00 retainer already paid for work performed by Dr. Mark McNulty in calculating loss earnings due to work disability for petitioner. *Id.* at 67-68. As noted in prior rulings, Dr. McNulty is an economist and statistician and holds a Ph.D. in both subjects. *Ferguson*, 2022 WL 1467655, at *3. He provided an expert report at a rate of $400.00 per hour for 41.35 hours of work on this case. Motion for Fees at 68. Dr. McNulty has been previously compensated at this rate for similar work provided. *See Hodkinson v. Sec'y of Health & Human Servs.*, No. 14-660V, 2021 WL 5711949, at *4 (Fed. Cl. Spec. Mstr. Nov. 2, 2021). While Dr. McNulty's hours expended have been lower in previous

rulings, Dr. McNulty explained that the "economic loss analysis for Ms. Williams was extremely complicated and took considerable time to compute and describe," given her military service and benefits, the analysis of transition to civilian employment, and the present value of the life care plan. Motion for Fees at 67. Thus, the undersigned finds Dr. McNulty's hourly rate and time spent working on this case reasonable and compensates him in full.

Petitioner requested $19,600.00 for work performed by medical expert Dr. Carlo Tornatore. *Id.* at 82-83. Dr. Tornatore spent a total of 49 hours on this matter, including time spent on the initial expert report, a supplemental report, and at hearing. *Id.* He billed at a rate of $400 per hour. *Id.* This rate is consistent with what he has previously been awarded and the hours expended are also reasonable. *See Hitt v. Sec'y of Health & Human Servs.*, No. 15-1283V, 2022 WL 3591141, at *3 (Fed. Cl. Spec. Mstr. July 27, 2022). Thus, the undersigned compensates Dr. Tornatore in full.

Finally, petitioner requested $1,977.65 to cover other miscellaneous expenses, including copies, Fed Ex costs, and For the Record expenses. Motion for Fees at 62, 84. The undersigned finds these costs reasonable and awards them in full.

### IV. Total Award Summary

Based on the foregoing, petitioner's Motion for Interim Attorneys' Fees and Costs is **GRANTED IN PART**. Accordingly, I award **$114,665.86,** representing **$63,793.40** in attorneys' fees and **$50,872.46** in attorneys' costs in the form of a check payable jointly to **petitioner Wendy Williams and petitioners' counsel, Richard Gage of Richard Gage, P.C. The clerk shall enter judgment accordingly.**[5]

**IT IS SO ORDERED.**

**s/Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.